## Case No. 4,742.
### FERGUSON v. ZEPP.
[4 Wash. C. C. 645.][1]

Circuit Court, E. D Pennsylvania.   April Term, 1827.

Mr. Kittera, for plaintiff.
Mr. Rawle, for defendant.

WASHINGTON, Circuit Justice. The only question in the case is, whether Mary Dickenson took an estate in fee, or only a life estate in the land which is the subject of this suit. If the former, judgment must be given for the defendant; if the latter, then for the plaintiff.

After giving his soul to his Creator, and declaring that, as to his worldly goods, he gives as follows, the will proceeds thus,— "Item, I give and bequeath unto my beloved wife, Mary Dickenson, all and singular my goods and effects, both real and personal, of what kind soever, or wheresoever, after my debts and funeral expenses are paid." The

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

only other clause in the will is that which follows the above, whereby he appoints his wife, and his brother Cadwallader Dickenson, his executors, and revokes all former wills theretofore made, either by word, or writing. In this will we find no words of inheritance annexed to the devise to the person who is the sole devisee; and the only inquiry is, whether there are any expressions which, when used in a will, are in themselves equivalent to words of inheritance; or whether an intention to give the whole of the testator's interest in his real property to this devisee, can be fairly collected from the whole of the will. If there be no such intention, or no such expressions, it is agreed by the counsel on both sides, that the general rule of law, which favours the heir at law, must prevail. As to intention, independent of the legal interpretation of the words used in the clause containing the devise to Mary Dickenson, nothing can be gathered from other parts of this will to explain their meaning, unless it is furnished by the introductory clause; since they constitute the whole of the will, with the exception of the one which appoints the executors.

The inquiry is then narrowed down to the particular phraseology of the devising clause; and the question is, whether the words here used, are sufficient, in point of law, to pass all the interest which the testator had in his real estate. There are many words denoting the quantity of estate, or interest intended to be disposed of by the testator, which, from their own import, sanctioned by judicial authority, assume a technical character; and, unless they are controlled by a contrary intention, manifestly appearing in other parts of the will, are equivalent in their legal effect to words of inheritance in their strictest sense. Thus the words "estate," "for ever," "the devisee to have all his inheritance," "purchase," "to give and dispose of at the pleasure of the devisee," "all the right, title and interest," or "all the interest of the devisor in the thing devised," "all the real property of the testator," or "all his worldly substance," &c. What, for example, is the "estate," the "interest," the "inheritance," "property," or "worldly substance" of a tenant in fee simple of real property, but a fee simple interest; and it is that which forms the subject of the devise. when those expressions, or either of them are used. They import in their most common acceptation, all the interest which the testator possesses, and can part with, generally, or in the thing devised, as the case may be; and to restrict their meaning to a life estate, would manifestly violate his intention; unless from other expressions in the will, it is clear that they were used merely to indicate a particular species of property, or a particular piece of land, and to distinguish it from other property of the testator. But these and other expressions of

like import, which, before they had obtained a meaning under the established judicial authority, were merely indicative of the intention of the testator to give a fee, and on that ground were construed to give it, have, under the sanction of that authority, become as strictly technical as those other words, which are so independent of intention. Thus, a devise of all a man's estate, interest, property, or worldly substance, will pass a fee simple in land, in like manner as if it had been given to him and his heirs; unless those expressions be restrained by some other words, or unless a contrary intention appear from some other part, or from the whole of the will. And it is most important for the sake of security in the disposal of real property, which so much depends upon a uniformity of decisions, that, when certain expressions have obtained a particular definite meaning by a course of decisions, or even by an undisturbed and unquestioned adjudication, such meaning should be adhered to, and the expressions so defined should be considered as technical in all subsequent similar cases.

This brings me to the consideration of the particular expressions used in the devise to Mary Dickenson, which I have purposely excluded from the list before mentioned, with a view to a more minute examination of their meaning. They are, "all and singular my goods and effects, both real and personal, of what kind soever, or wheresoever." As these expressions have received a definite judicial interpretation, by the highest authority, more than half a century ago, it can only be necessary to refer to the authority itself for their meaning. In the case of Hogan v. Jackson, Cowp. 299, decided in the year 1775, the devise was to the wife of the testator of his house and lands of G. for her natural life; and also of his lands of B. for the term of her natural life, without liberty of committing waste; and, after sundry annuities and legacies to different persons, he gives to his said wife "all the remainder and residue of all the effects, both real and personal, which he shall die possessed of." Lord Mansfield observed, that the cause turned upon a single point, which was to fix the meaning of the word "effects" in the English language. "If," said he, "it be equivalent to 'worldly substance,' used by the testator in the beginning of his will, or if it be synonymous to 'property,' there is an end of the question, because then all the cases prove that the sweeping clause passes a fee. On the contrary, if it can be shown that 'effects' mean 'chattels,' or personality only, then the residuary clause can include them only." He then concludes by saying, that he takes "effects" to be synonymous to "worldly substance;" which means, whatever can be turned to value; and therefore, that real and personal effects mean all a man's property. This decision was afterwards carried

by writ of error before the house of lords, where it was affirmed in conformity with the unanimous opinion of all the judges, that the devisee took an estate in fee in all the testator's property under the residuary clause. If there be no material difference between that case and the one now under consideration, the decision in that ought to be conclusive; since its correctness has never been questioned in any subsequent decision in England, or in the United States.

It is insisted by the plaintiff's counsel, that the two cases are strikingly different in the three following particulars: 1. In the introductory clause. 2. In the import of the words, "remainder and residue." And, 3. In the devise of an annuity to the heir at law. As to the introductory clause, it is well settled, that it can never be attached to the devising clause, so as, per se, to enlarge the latter to a fee, unless the words used in the devising clause admit of passing a greater interest than for life; and it is only in such cases, and where the intention of the testator is, from other parts of the will rendered doubtful, that the court will lay hold of an introductory clause for the purpose of aiding in ascertaining the intention. This is stated by Lord Mansfield in the case we are examining, and by the learned judge who delivered the opinion of the supreme court in the case of Wright v. Denn, 10 Wheat. [23 U. S.] 228. It is further to be remarked, that little or no reliance was placed upon that clause by Lord Mansfield; or in the case just referred to from 10 Wheaton, where it is stated that the former case did not turn upon the effect of the introductory clause, but upon the other words of the will; which were thought sufficient to carry the fee, particularly the words, "all my effects both real and personal." Page 229. The truth is, that the discovery of the real intention of the testator in that case was rendered very difficult by other parts of the will, particularly that which devised to the wife two specified portions (which possibly embraced the whole) of his real estate expressly for life, and, as to one of them, without impeachment of waste; which devises, it was contended, and with great strength, would be rendered of no effect, if the residuary clause should be so construed as to give a fee, and so to merge the life estate by being engrafted on it. In a case of that kind, it was entirely consistent with the well established rules of construing wills to derive from the introductory clause, or from any other clause in the will, all the aid it could afford in ascertaining the general intention of the testator.

But the counsel for the plaintiff in this case appears from his written argument, to have overlooked the introductory clause; which, although comprised in a few words, is, when taken in connection with the devising clause, quite as significant as the expressions used in the introductory clause in Hogan v. Jackson. I admit that "worldly goods" would, per se,

apply, as would "worldly effects," only to personal property. But then they import the whole of the testator's interest in that species of property, and when those expressions are explained and extended to "worldly goods, real and personal," they are clearly equivalent to "worldly substance;" which are the words used in the introductory clause to Jackson's will. I desire, however, to be understood as placing no reliance whatever upon the introductory clause in this case, which turns altogether upon the meaning of the particular expressions in the devising clause, and is unembarrassed, as to the intention of the testator, by other clauses in the will. As to the words "residue and remainder," in the case cited, they are not in themselves sufficient to enlarge an estate; nor have they ever been so construed, unless from necessity, in cases where, a life estate in all the testator's property, or in the particular property to which they apply, having been previously disposed of by the will, those expressions would have nothing to operate upon, unless they should be construed to pass the inheritance, or remaining interest of the testator in the property. This was clearly decided in the cases of Canning v. Canning, Mos. 240; Moor v. Denn, 2 Bos. & P. 247; 5 Term R. 558, under the name of Denn v. Mellor; Doe v. Richards, 3 Term. R. 356; and Norton v. Ladd, 1 Lutw. 755, 756; and was fully recognized by the supreme court in the case of Wright v. Denn, 10 Wheat. [23 U. S.] 206, before alluded to. As to the devise of the annuity to the heir at law, I admit that this is a circumstance of no small weight in ascertaining the intention of the testator to dispose of his whole interest, in a case where that intention is rendered doubtful by other parts of the will. But it is in such a case only that such a bequest can be material. It is with this view only that it is resorted to by Lord Mansfield, as appears from what he says respecting it in [Hogan v. Jackson, Cowp.] page 307. But it is manifest, from the quotation which I have given at large of what was said by him, that his opinion was founded solely upon the meaning of the expressions "effects real and personal;" and that the other expressions upon which the plaintiff's counsel in this case relies, were noticed for the sole purpose of showing that the general intention of the testator was consistent with the meaning which he had given to the expressions upon which the cause was declared by him to turn. I think then that the case of Hogan v. Jackson has conclusively settled the meaning of the expressions used in the devise to Mary Dickenson; and that it would introduce great uncertainty and mischief, were the courts now to say that they were not sufficient to pass a fee, in a case where their meaning stands unaffected by other parts of the will indicating a contrary intention.

It will be observed that in this opinion I have placed no reliance upon the charge for payment of debts and funeral expenses, to which the plaintiff's counsel in his written argument has devoted much of his attention. My reason is, that I entirely concur with him in the view which he has taken of that subject, and if the quantum of estate given to Mary Dickenson depended entirely upon that part of the will, I should be of opinion that she could claim no greater interest than an estate for life. Whatever obscurity may be supposed to have rested upon the question, how far a charge upon land for payment of debts enlarged the estate of the devisee of such land, it is cleared away, and the principle is permanently settled, by the cases of Doe v. Richards, 3 Term R. 356; Denn v. Mellor, 5 Term R. 558; Doe v. Allen, 8 Term R. 497; and Wright v. Denn, 10 Wheat. [23 U. S.] 206. That principle is, that where a gross sum, or debts, &c. are charged on the estate devised, and not on the devisee, the devisee, on a general devise to him, takes only an estate for life. But where the charge is on him personally in respect of the devise, there he takes a fee; since he might be a loser in a case where a benefit was intended, if his estate should terminate with his life.

In the case of Denn v. Mellor, the devise was of all the rest of his lands, &c. goods and personal estate, after payment of his just debts, to C., who was appointed executor. Lord Kenyon takes the above distinction, and observes, that the case of Doe v. Richards turned upon the words "my debts and funeral expenses being thereout paid;" which imported that they were to be paid by the devisee out of the interest given her, and were a charge on the estate in her hands; and that if she died soon after the testator, and had only an estate for life, the fund out of which she was to bear those charges might have failed. But that in the case at bar there were no words which charged the estate in the hands of the devisee with the payment of the debts, &c., nor were they a charge on him. This opinion was afterwards affirmed in the house of lords; and being fully recognized as law by the supreme court of the United States in the case of Wright v. Denn, before referred to, has fully settled the law upon this point, at all events in the courts of the United States. It may be observed, in addition to the above mentioned reasons stated by Lord Kenyon, and such indeed is the conclusion to be drawn from the case he supposes, that the devise to the wife was nothing more than the property which might remain after the debts were paid, which, upon no principle whatever, could be construed to imply a personal charge. In the case of Doe v. Allen, 8 Term R. 497, the testator devises that all his debts and funeral expenses shall be paid out of his personal estate, and if that fall short, then he charges his real estate with the payment of them; after which he gives all his lands, &c. unto W. A. It was decided upon the principle before stated, that only an estate for life

passed. The devise in this case is precisely like that in the case of Denn v. Mellor, "to Mary Dickenson, after my debts and funeral expenses are paid." But I am of opinion, upon the other expressions in the will, that Mary Dickenson took an estate in fee simple in all the real estate of the testator. Judgment for defendant.